# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: GENE R. ROSAS<br><br>*Debtor*,<br><br>——————————————<br><br>GENE R. ROSAS,<br><br>*Appellant,*<br><br>v.<br><br>AMERICA'S SERVICING COMPANY AND DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE FREMONT HOME LOAN TRUST SERIES 2006-3,<br><br>*Appellees*. | § § § § § § § § § § § § § § § § § § § § | Civil Action No.  SA-14-CV-601-XR<br>Bkr. Adv. Case No. SA-13-05080 |

## ORDER

On this day the Court considered Appellant Gene R. Rosas' appeal of the Bankruptcy Judge's summary judgment order relating to the mortgage and foreclosure of his home.  For the following reasons, the Court AFFIRMS the judgment of the Bankruptcy Court.

## I.      BACKGROUND

Appellant Gene R. Rosas filed for Chapter 13 bankruptcy on September 2, 2013. Appellant then filed an adversarial proceeding to determine the validity of a lien against a property located at 6706 Berg Boulevard, San Antonio, Texas (the "Property"),  and to quiet title against Appellees America's Servicing Company ("ASC") and Deutsche National Trust Company, as trustee, on October 2, 2013.

1

To purchase the Property Appellant executed a note for $275,000 (the "Note"), secured with a deed of trust for the Property ("Deed of Trust") (collectively the "Loan") on June 23, 2006.  Appellant defaulted on the Loan in December 2007, and Appellees sent a Notice of Default and Intent to Accelerate on August 6, 2007.  Appellees then sent a Notice of Foreclosure Sale on September 24, 2007, scheduling a foreclosure sale of the Property for November 6, 2007. Though Appellees submitted no document officially called a notice of intent to accelerate to Appellant, Appellees properly accelerated the Note by at least September 24, 2007.[1]

In order to stop the foreclosure sale, Appellant filed his first[2] lawsuit in state court and was granted his first[3] temporary restraining order on November 5, 2007.  After Appellant non-suited two weeks later, Appellees rescheduled the foreclosure sale for February 5, 2008. Appellant's wife filed a lawsuit and received a restraining order in state court the day before the scheduled foreclosure sale.  The second case was dismissed with prejudice after the parties reached a Rule 11 agreement providing: 1) dismissal of the suit with prejudice, 2) the Loan would be fully reinstated or paid off, or otherwise Appellees would foreclose in April 2008, and 3) Appellant would inform Appellees prior to seeking any further injunctive relief against them.

Appellant failed to reinstate or pay off the Loan.  But he did file a third state court lawsuit and receive his third temporary restraining order without giving Appellees prior notice on March 31, 2008.  This third case was dismissed with prejudice and the temporary restraining order was vacated after another agreed order.

Appellees scheduled a fourth foreclosure sale for July 1, 2008.  Appellant responded by filing a fourth lawsuit in state court, to which Appellees responded and filed a counterclaim.  No

---

[1] Appellees concede this point on appeal.
[2] Of five.
[3] Of three.

TRO was granted in the fourth lawsuit, but the July 1, 2008 foreclosure sale never occurred.[4]

Appellant then filed his first[5] bankruptcy in the Bankruptcy Court for the Western District of

Texas–San Antonio Division on November 3, 2008, which stayed the state court proceedings.

The Bankruptcy Court dismissed that case on December 17, 2008.  After the bankruptcy stay

lifted, the state court dismissed the fourth lawsuit with prejudice on January 15, 2009.

Appellees again scheduled a foreclosure sale of the Property for February 1, 2009, but that sale

never occurred.[6]  Appellees then scheduled a foreclosure sale for May 5, 2009, which Appellant

stopped by filing for his second bankruptcy.  The Bankruptcy Court dismissed the second

bankruptcy on July 13, 2009.  Appellees again scheduled a foreclosure sale of the Property, this

time for September 1, 2009, but Appellant's wife blocked that sale by filing the couple's third

bankruptcy on that same day.  The Bankruptcy Court dismissed the third bankruptcy case on

October 19, 2009.

Following this series of cases, Appellant submitted several loan modification applications

to Appellees.  Eventually, on May 20, 2010, Appellees sent Appellant a "Special Forbearance

Agreement" (the "Forbearance Agreement"), which he signed. The Forbearance Agreement

provided that: 1) Appellant currently owed for 38 months, 2) Appellant would make seven

payments, totaling $26,427, over approximately six months in exchange for Appellees not

foreclosing the Property, and 3) Appellant was to continue discussing a loan modification with

Appellees during this payment period.   Additionally, the Forbearance Agreement included

provisions stating that: 1) the forbearance "shall not constitute a waiver of [Appellee's] rights to

insist upon strict performance in the future;" 2) "the provisions of the [Note and Deed of Trust]

. . . shall remain in full force and effect" except as provided in the Agreement; 3) if any of the

---

[4] No reason is given for the cancellation in the record.
[5] Of five.
[6] No reason is given for the cancellation in the record.

seven payments was late, the Forbearance Agreement would "be void and the total delinquency, including fees, will be due immediately;" 4) "in consideration of extending forbearance for a period of time;" and 5) if any part of any payment was not received on time, the Forbearance Agreement "will be rendered null and void."   Appellant signed the Forbearance Agreement on June 2, 2010.  No representative from Appellees ever signed the Forbearance Agreement.

The first payment under the Forbearance Agreement was due on June 15, 2014. Appellant was unable to successfully make the payment due to an error, but he attempted to make the payment.  Appellee then sent Appellant a monthly mortgage statement declaring that Appellant must pay $114,889.42 by July 1, 2010.  This amount was less than the $261,807.000 unpaid amount on the Loan at the time.

Appellant filed for Chapter 13 bankruptcy for the fourth time on July 6, 2010.  Appellees sent another Notice of Default and Intent to Accelerate on July 7, 2010.  After the Bankruptcy Court dismissed Appellant's fourth bankruptcy case on August 30, 2010, Appellant began making payments.[7]  Appellant made five payments of $3,554.46 from September 2, 2010 to January 5, 2010, totaling $17,772.30.  From October 2010 to February 2011, Appellees sent Appellant three monthly mortgage statements detailing the amount Appellant currently owed,  all of which showed a balance of less than the total outstanding balance on the Loan.  Appellees eventually sent Appellant a Notice of Rescission of Acceleration on May 4, 2011, which reserved their rights to "accelerate and collect" the Loan in the future.

The parties continued to discuss loan modification, but Appellees ultimately rejected Appellant's loan modification applications.  They sent a new Notice of Default and Intent to

---

[7] After some informal discussions regarding the error in payment on the Forbearance Agreement, the parties agreed to continue with the Forbearance Agreement.  Docket no. 1, Ex. 4, at deposition page 146-48.

Accelerate on January 13, 2012, and then a Notice of Acceleration and Notice of Sale on February 13, 2012, which scheduled the foreclosure sale for March 6, 2012.

Appellant filed his fifth and final state court lawsuit on February 24, 2012 to stop the March 6, 2012 foreclosure sale, arguing Texas' four-year statute of limitations to foreclose after acceleration had elapsed and Appellees no longer had the right to foreclose the property. Appellees removed the fifth state court lawsuit to federal court.  Appellees re-started foreclosure proceedings again on August 8, 2013, sending yet another Notice of Acceleration and Notice of Sale and scheduling the foreclosure for September 3, 2013.  With the fifth lawsuit still pending in federal court, Appellant moved for a temporary restraining order to stop the foreclosure sale. Judge Biery denied the temporary restraining order because Appellant "failed to show a substantial likelihood of success on the merits based on the statute of limitations." *Rosas v. America's Servicing Company, et. al*, 5:12-cv-00819-FB, docket no. 23 at p. 7 (August 23, 2013).

Following Judge Biery's order, Appellant filed for his fifth bankruptcy to block the September 2013 foreclosure sale and commenced the adversary proceeding against Appellees. The parties filed cross motions for summary judgment.   The Bankruptcy Court granted Appellees' motion and denied Appellant's on May 5, 2014, holding that the statute of limitations had not expired because the initial acceleration was abandoned.  *In re Rosas*, 13-52402-CAG, 2014 WL 1779437 (Bankr. W.D. Tex. May 5, 2014) (docket no. 1, Ex. AA).  The Bankruptcy Court issued a judgment in favor of Appellees on May 6, 2014.  Appellant timely filed his notice of appeal.

## II.   JURISIDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(3), which grants federal district courts jurisdiction over appeals from federal bankruptcy court.   In reviewing a decision of the bankruptcy court, this Court functions as an appellate court, applying the standards of review generally applied in federal court appeals.   *See In re Camp*, 631 F.3d 757, 759 (5th Cir. 2011) (quoting *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 652 (5th Cir. 2010)).   This Court reviews the Bankruptcy Court's conclusions of law under a *de novo* standard, mixed questions of fact and law under a *de novo* standard, and findings of fact under a clearly erroneous standard.   *See In re Cipolla*, 541 F. App'x 473, 476 (5th Cir. 2013) (citing *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000)).

## III.   ANALYSIS

Texas law creates a four-year statute of limitations for enforcing a real property lien, like the Loan here.   TEX. CIV. PRAC. & REM. CODE § 16.035 (2013).   The Texas Business and Commerce Code establishes a six-year statute of limitations to enforce collection on a note. TEX. BUS. & COM. CODE § 3.118(a) (2013).   Appellant raises one issue on appeal: 1) whether the Bankruptcy Court erred in finding the statute of limitations has not expired and Appellees have the right to foreclose the Property.   This is a question of law to be reviewed *de novo*.

### A. Abandonment

The four-year limitations period to enforce a real property lien does not begin running until acceleration is exercised when the loan provides for acceleration.   *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Rabo Agrifinance Inc. v. Terra XXI Ltd.*, 257 F. App'x 732, 734 (5th Cir. 2007).   "Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration."   *Holy Cross*, 44 S.W.3d at 566; *Porterfield v.*

*JP Morgan Chase, N.A.*, SA-12-CV-815-DAE, 2014 WL 3587783, *13 (W.D. Tex. July 21, 2014).  Appellees first properly accelerated the Loan by September 24, 2007 at the latest.

Once acceleration has been exercised, the statute of limitations period can be reset with noteholders maintaining their right to re-accelerate at a later date if the acceleration is abandoned.  *Holy Cross*, 44 S.W.3d at 566-67; *Ward v. Stanford*, 05-12-00855-CV, 2014 WL 3955161, *6-*7 (Tex. App.—Dallas Aug. 14, 2014, no pet.); *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App.— Houston [1st Dist.] 2012, no pet.) ("Abandonment of acceleration has the effect of restoring the contract to its original condition, including restoring the note's original maturity date.").  "Acceleration can be abandoned by agreement or other action of the parties." *Khan*, 371 S.W.3d at 353 (citing *Holy Cross*, 44 S.W.3d at 567); *Santibanez v. Saxon Mortgage Inc.*, 11-10-00227-CV, 2012 WL 3639814, *2-*3 (Tex. App.—Eastland Aug. 23, 2012, no pet.) (holding an agreement that asked for a payment in exchange for a "stop [to] all foreclosure proceedings and bring the loan to current status" sufficed for abandonment).  "Other actions" considered by courts to determine abandonment include, but are not limited to, accepting payment without pursuing remedies available upon acceleration, *Holy Cross*, 44 S.W.3d at 567, interest charged compared to permitted interest while in acceleration, *Khan*, 371 S.W.3d at 355, statements by either party about the loan's acceleration status, *Id.*, and filing a unilateral notice of rescission of acceleration, *Clawson v. GMAC Mortgage, LLC*, 3:12-CV-00212, 2013 WL 1948128 (S.D. Tex. May 9, 2013); *but see Callan v. Deutsche Bank Trust Co. Americas*, 4:13-CV-247, 2014 WL 1314831, at *6–*7 (S.D. Tex. Mar. 27, 2014).

Appellees argue several actions taken by the parties between May 20, 2010 and May 4, 2011 demonstrate abandonment: 1) Appellees issuing, and Appellant signing, the Forbearance Agreement providing that the loan was currently "due for 38 installments, from April 01, 2007

7

through May 01, 2010." 2)  Appellant's tendering of five payments and Appellee's acceptance of five payments from September 2010 to January 2011 that were applied to Appellant's balance owed on the Loan. 3) Four monthly mortgage statements issued by Appellees to Appellant stating the amount due on the loan was less than the amount owed on the entire Loan. 4)  The Notice of Rescission of Acceleration Appellees issued on May 4, 2011 rescinding accelerations from April 4, 2010 "and all prior notices of acceleration," which also expressly reserved the right for Appellees to accelerate in the future.

Appellant argues the above actions did not constitute abandonment because: 1) the actions, including the Forbearance Agreement, were unclear and equivocal as to abandonment; 2) the Forbearance Agreement is unenforceable because it fails under the Texas Statute of Frauds and because it is an illusory contract; and 3) unilateral actions cannot amount to abandonment.

The Bankruptcy Court found Appellees abandoned all accelerations[8] from before June 2, 2010 because:  (1) the Forbearance Agreement alone established abandonment; (2) "the parties' conduct in tendering and accepting payments in accordance with the Forbearance Agreement" alone established abandonment; and (3) the Monthly Mortgage Statements further demonstrated abandonment.   The Bankruptcy Court did not address Appellees' Notice of Rescission of Acceleration from 2011 in its analysis.

The parties can establish abandonment through an agreement or their actions alone, including unilateral actions in certain circumstances.  *Khan*, 371 S.W.3d at 353 (citing *Holy Cross*, 44 S.W.3d at 567).   The Forbearance Agreement, by its language, established an agreement sufficient for Appellees to abandon previous accelerations.   Appellees sent an unsigned version of the Forbearance Agreement to Appellant that stated the Loan was currently due for 38 months' worth of payments.   Appellant, by his signature, affirmed that only 38

---

[8] To the extent there were more than one acceleration prior to June 2, 2010, it is irrelevant to this Court's decision.

months' worth of payments were due.  The full amount of the Loan was therefore not due as of June 2, 2010.  Because the full amount was not due, the Loan was no longer accelerated, so previous acceleration notices were abandoned.  *See Santibanez*, 2012 WL 3639814, at \*2-\*3.

Appellant argues that the Texas Statute of Frauds prevents the Forbearance Agreement from establishing abandonment.  Alternatively, he argues that the Forbearance Agreement was unclear and illusory.  The Bankruptcy Court found the Statue of Frauds inapplicable here, and the illusory and lack of clarity arguments unconvincing.

The Texas Statute of Frauds typically requires loan agreements concerning $50,000 or more to be in writing and fulfill certain requirements.  TEX. BUS. & COM. CODE § 26.02(b).  However, the Texas Statute of Frauds does not apply to abandonment because abandonment can be accomplished through actions alone; actions that do not have to be in writing.  *See Khan*, 371 S.W.3d at 356 (citing *San Antonio Real Estate Bldg. & Loan Ass'n v. Stewart*, 94 Tex. 441, 447, 61 S.W. 386, 388-89 (1901)).  Therefore, the Forbearance Agreement did not need to satisfy the Texas Statute of Frauds to establish abandonment.[9]

Appellant next argues that the Forbearance Agreement's language was illusory and unclear as to abandonment because it let Appellees foreclose at any time without notifying Appellant or re-accelerating.[10]  Appellant bases his argument on three provisions of the

---

[9] It is important to note that, even if the Forbearance Agreement is not an "agreement" within the meaning of *Khan* and *Stewart* because Appellees did not sign, it still represents strong actions by the parties that amount to abandonment.

[10] Appellant also "argues" that the Bankruptcy Judge did not view this issue in the light most favorable to him, the nonmovant.  Appellant appears to be arguing that there is a genuine issue of material fact regarding abandonment.  Whether abandonment has occurred has been overturned on summary judgment appeal as a "fact" issue.  *Holy Cross*, 44 S.W.3d at 566-67; *Stanford*, 2014 WL 3955161, \*6-\*7.  However, in those instances the parties disputed whether events occurred or statements were made, and the trial courts appeared to make credibility determinations about the evidence to help reach their conclusions of law.  Here, Appellant does not dispute the contents of the Forbearance Agreement, signing the Forbearance Agreement, making payments after May 20, 2010, receiving monthly mortgage statements with adjusted amounts owed, or any other material fact.  Instead, he simply disagrees with the Bankruptcy Judge's conclusions of law about what those facts mean, claiming "a reasonable jury could find" certain facts lead to no abandonment.  By concluding as a matter of law the undisputed facts show

9

Forbearance Agreement: 1) Appellees, at their "option, may institute foreclosure proceedings according to the terms of the [Note and Deed of Trust] without regard to [the Forbearance Agreement]"; 2) "All provisions of the [Note and Deed of Trust] except as provided herein, shall remain in full force and effect;" and 3) "in consideration of extending forbearance for a period of time."

Appellant argues these provisions allowed Appellees to foreclose at any time without re-accelerating, or even notifying Appellant, without committing Appellees to anything in return. Appellant cites a case from California, *Reyes v. Wells Fargo Bank, N.A.*, where an agreement included the same "in consideration of extending forbearance for a period of time" language as here. C-10-01667 JCS, 2011 WL 30759, *16 (N.D. Cal. Jan. 3, 2011) (holding the agreement unenforceable). Other provisions in the agreement left the lenders "unfettered discretion" because they could foreclose at any time without warning the borrower. *Id.*

Notwithstanding that *Reyes* does not apply Texas law or involve abandonment, the Court is not convinced Appellees in this case have the same "unfettered discretion" to foreclose at any time given the terms of the Forbearance Agreement, as it is unclear from *Reyes* whether the lender had to re-accelerate. *Id.* The agreement in *Reyes* also explicitly allowed the lender to act "without further notice" to the Appellant. *Id.* Conversely, the Forbearance Agreement's express language requires Appellees to "institute foreclosure proceedings according to the terms" of the Note and Deed of Trust, which require notice of intent to acceleration and notice of acceleration all over again. Appellees, by the Forbearance Agreement's express terms, would have to properly re-accelerate the Loan and notify Appellant in order to foreclose, as they later did when Appellant failed to make payments.

---

abandonment, the Bankruptcy Judge explicitly determined a reasonable juror could not look at the undisputed facts and find no abandonment. Appellant does not point to any genuine issues of material fact.

For these reasons, the Bankruptcy Court did not err in concluding the Forbearance Agreement amounted to abandonment of all accelerations prior to June 2, 2010.[11]  The monthly mortgage statements declaring the amount due was for 38 months' worth of payments, not the total amount of the Loan, are further evidence the Forbearance Agreement abandoned the accelerations prior to June 2, 2010.  The discussions the parties had regarding loan modification during the period following the Forbearance Agreement also help demonstrate the Forbearance Agreement abandoned the acceleration.

The Bankruptcy Court also held Appellant's tendering and Appellee's acceptance of payments largely mirroring the plan outlined in the Forbearance Agreement constituted abandonment on their own.  Tendering and accepting payment for less than the total amount of the debt while not pursuing other available remedies can demonstrate abandonment.  *Holy Cross*, 44 S.W.3d at 567; *Khan*, 371 S.W.3d at 353.  Appellant argues *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548 (5th Cir. 2012) cert. denied, 133 S. Ct. 1272, 185 L. Ed. 2d 185 (U.S. 2013), and *Jimenez v. Flagstar Bank, F.S.B.*, SA-13-CV-186-XR, 2013 WL 6332128 (W.D. Tex. Dec. 5, 2013) show payments made to a lender after acceleration do not automatically mean the acceleration was abandoned.  Both cases hold similar agreements to the Forbearance Agreement as non-binding in the breach of contract context.  *Pennington*, 493 F. App'x at 555; *Jimenez*, 2013 WL 6332128, at *5.  Neither case at any point discusses abandonment or the statute of limitations for foreclosure after acceleration.  Though the cases may indicate the Forbearance Agreement is not an enforceable agreement for breach of contract claims, again, the Forbearance Agreement is an action by both parties that established abandonment. Its enforceability is irrelevant and does not impact whether tendering and accepting payments constitutes abandonment.

---

[11] The date Appellant signed the Forbearance Agreement.

Here, Appellant tendered, and Appellees accepted, five payments from September 2010 to January 2011 totaling $17,772.30.  The amounts were credited to Appellant's account and reflected back to him in the monthly mortgage statements.  During this time, and for some time after, Appellees did not pursue any remedies available to them had the Loan been accelerated. Appellees also reviewed Appellant's loan modification application.   The monthly mortgage statements are further evidence the payments were accepted and the acceleration abandoned. The Bankruptcy Court did not err in finding Appellees acceptance of payments and applying them to the amount owed without seeking other remedies constituted abandonment.  *Santibanez*, 2012 WL 3639814, at \*2-\*3; *Wells v. Bank of Am., N.A.*, 3:13-CV-3658-M, 2014 WL 4594516 (N.D. Tex. Sept. 12, 2014).

The Forbearance Agreement and the tendering and accepting of payments without seeking remedies after the Forbearance Agreement, individually and together, were sufficient actions for Appellees to abandon accelerations from before June 2, 2010.[12]

## B.  "Detrimental Reliance"

Appellant argues Appellees could not have effectively abandoned the acceleration because he detrimentally relied on the acceleration.  Appellant relies on *Swoboda v. Wilshire Credit Corp.*, which states "the election to accelerate can be revoked or withdrawn at any time, so long as the debtor has not detrimentally relied on the acceleration."  975 S.W.2d 770, 777 (Tex. App.—Corpus Christi  1998, pet. denied) disapproved on other grounds by *Holy Cross*, 44 S.W.3d at 566 (citing *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ)).  Appellees argue *Holy Cross* overruled *Swoboda* on the detrimental reliance point.  Though *Holy Cross* specifically disapproves of *Swoboda* on a related issue, it does not explicitly overrule the "detrimental reliance" point.

---

[12] The Court does not reach the issue of the Appellees' Notice of Rescission of Acceleration.

There are other reasons to doubt Texas law contemplates detrimental reliance in the abandonment context, except in extraordinary circumstances.   Appellees argue the cases *Swoboda* cites for the broad detrimental reliance rule do not stand for such a rule in Texas. *Denbina* would only estop abandonment when the borrower objects.   516 S.W.2d at 463 ("Where the payor makes no objection to the recall of the option, we see no reason why the [payee] could not revoke" the option as if never having exercised it.).   The other three cases *Swoboda* cites for the proposition do not apply Texas law. *In re Adu–Kofi*, 94 B.R. 14, 15 (Bankr. D. R.I. 1988) (applying Rhode Island law); *In re LHD Realty Corp.*, 726 F.2d 327, 331 n. 4 (7th Cir. 1984) (applying Indiana law); *Golden v. Ramapo Improvement Corp.*, 78 A.D.2d 648, 432 N.Y.S.2d 238, 241 (1980) (applying New York law).  In addition, *Swoboda* states the detrimental reliance rule, but never applies it to the facts. *See Swoboda*, 975 S.W.2d at 777.

However, a federal court recently held a lender was estopped under Texas law from unilaterally abandoning acceleration that the lender had maintained until three days before the statute of limitations expired because the borrower had detrimentally relied on the acceleration by entering bankruptcy. *Callan*, 2014 WL 1314831, at *6-*7 (S.D. Tex. Mar. 27, 2014) ("From [*San Antonio v. Stewart*], the principle was recognized that a noteholder is estopped from asserting a right previously waived, such as a right to acceleration, where the debtor acted in reliance upon the belief that the noteholder had waived the right.").  The *Callan* court further cited cases for the proposition that lenders cannot abandon acceleration over the objection of the borrower. *Id.* (citing *Manes v. Bletsch*, 239 S.W. 307, 308 (Tex. App.—Austin, 1922); *Denbina*, 516 S.W.2d 460)).

In *Callan*, the lender non-suited its only two foreclosure proceedings without reason, the borrower made no payments after acceleration, and the lender's only action to indicate

abandonment of the acceleration was a notice of rescission of acceleration at "the eleventh hour," which the borrower had no opportunity to affirm or deny prior to the statute of limitations expiring. *Id.* The *Callan* court was correctly concerned with the last-minute unilateral action where the borrower had never taken any action to affirm abandonment. If allowed, lenders could over-zealously seek to foreclose debts based on one missed payment and acceleration, or accelerate a debt and never act on it, only to circumvent and restart the statute of limitations by sending a unilateral notice of rescission the day before the limitations expired. None of what concerned the *Callan* court is present in this case.

This Court agrees that Texas law does not recognize abandonment for last-minute unilateral rescissions of acceleration against the objection of the borrower. *See, e.g.*, *Denbina*, 516 S.W.2d at 463. Here, the abandonment of acceleration from June 2, 2010 to January 13, 2011, based on the Forbearance Agreement, and tendering and acceptance of payments following it, clearly show this was not a case of a last-minute unilateral rescission over Appellant's objections.

Texas law and the principles of equity also do not recognize unilateral abandonment to circumvent the statute of limitations when the borrower detrimentally relied on the acceleration. *See Callan*, 2014 WL 1314831, at *6–*7. Given Appellant's signature on the Forbearance Agreement and his payments, the abandonment here was not unilateral. The acceleration was also not abandoned to circumvent the statute of limitations as it was done months ahead of the statute of limitations expiring in an attempt to collect payments and permit Appellant time to submit a loan modification application.

Further, Appellant did not detrimentally rely on Appellee's prior acceleration. Appellant argues he detrimentally relied because the acceleration "forced [him] to file restraining orders

14

and bankruptcies to avoid foreclosure in an effort to negotiate." Black's Law Dictionary defines detrimental reliance as "[r]eliance by one party on the acts or representations of another, causing a worsening of the first party's position." (9th ed. 2009). Notwithstanding Appellant's abuse of the legal system, as the Bankruptcy Court found, filing lawsuits to cause delay while remaining in the home without paying rent or the mortgage for seven years is not reliance "causing a worsening of" Appellant's position. Therefore, the Bankruptcy Court did not err in concluding all accelerations prior to June 2, 2010 were abandoned.[13]

## C. Subsequent Accelerations

After abandoning previous accelerations on June 2, 2010 and reviewing Appellant's loan modification application, Appellees' re-accelerated the Loan on February 13, 2012. *See Holy Cross*, 44 S.W.3d at 566. The statute of limitations found in §16.035 and §3.118 have not expired. The Bankruptcy Court was correct to find, as a matter of law, Appellees' rights to enforce collection on the Note are not time-barred.

## IV.    CONCLUSION

The Court AFFIRMS the Bankruptcy Court's Judgment in favor of Appellees. The Clerk is directed to CLOSE this case.

It is so ORDERED.

SIGNED this 14th day of October, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[13] Because the Bankruptcy Court did not address the issue of tolling presented by Appellees, the Court declines to reach that issue at this time.